UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LAREINA N.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

CASE NO. C18-1605 BAT

**ORDER AFFIRMING THE COMMISSIONER'S DECISION AND DISMISSING WITH PREJUDICE**

Plaintiff appeals the denial of her applications for Supplemental Security Income and Disability Insurance Benefits. She contends the ALJ erred by (**1**) discounting the opinions of three examining psychologists and a non-examining psychologist and (**2**) discounting plaintiff's symptom testimony. Dkt. 10. The Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

## BACKGROUND

Plaintiff is currently 44 years old, attended some college, and has worked as a home attendant, clerk, gambling dealer, and bakery assistant. In 2015, she applied for benefits, alleging disability as of **November 15, 2014**. After her applications were denied initially and on reconsideration, the ALJ conducted a hearing in April 2017. Tr. 33–67. In an October 2017

decision, the ALJ utilized the sequential evaluation process[1] and found at **step one** that plaintiff had not engaged in substantial gainful activity since the alleged onset date of **November 14, 2014**; at **step two** that plaintiff had the **severe impairments of personality disorder, mood disorder, anxiety disorder, and polysubstance abuse in early remission**; and at **step three** that none of those impairments met or equaled the requirements of a listed impairment.[2] Tr. 19–21. The ALJ determined that plaintiff has the **residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with certain non-exertional limitations: she can perform simple, routine tasks and can have occasional, superficial contact with the public.** Tr. 21–26. The ALJ found at **step four** that plaintiff could not perform any past, relevant work; and at **step five** that jobs exist in significant numbers in the national economy that plaintiff can perform. Tr. 26–27. The ALJ therefore found that plaintiff is not disabled. Tr. 27. Because the Appeals Council denied plaintiff's request for review, the ALJ's decision is the Commissioner's final decision.

## DISCUSSION

The Court will reverse the ALJ's decision only if it was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). The ALJ's decision may not be reversed on account of an error that is harmless. *Id.* at 1111. Where the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's interpretation. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Although she advances a plausible interpretation of the medical evidence and testimony, plaintiff has not demonstrated that the ALJ's decision was

---

[1] 20 C.F.R. §§ 404.1520, 416.920.

[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

unsupported by substantial evidence, was the result of harmful legal error, or was based on an unreasonable interpretation of the medical evidence.

**1. Evaluation of the Medical Evidence**

Plaintiff contends that the ALJ should have given more weight to the medical opinions of examining psychologists Kenneth Hapke, Ph.D., David Widlan, Ph.D., and James Czysz, Ph.D., and of non-examining psychologist Holly Petaja, Ph.D. The Court finds that the ALJ cited specific and legitimate reasons for discounting the opinions of Drs. Hapke, Widlan, Czysz, and Petaja that were supported by the contradictory opinions of non-examining psychologists John F. Robinson, Ph.D., and Jan Lewis, Ph.D., the medical treatment notes, and the record.

Generally, for cases filed before March 27, 2017, more weight should be given to the opinions of treating and examining doctors than to the opinions of doctors who do not treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *see* 20 C.F.R. § 404.1527(c)(2); SSR 96-2p. Here the ALJ favored the opinions of non-examining psychologists Drs. Robinson and Lewis over those by examining psychologists Drs. Hapke, Widlan, and Czysz and by non-examining psychologist Dr. Petaja. The Court therefore examines whether the examining opinions of Drs. Hapke, Widlan, and Czysz were rejected for specific and legitimate reasons that are supported by substantial evidence, *Lester*, 81 F.3d at 830; and whether the non-examining opinion of Dr. Petaja was discounted with reference to specific evidence in the medical record, *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998). “The opinion of a nonexamining physician cannot *by itself* constitute substantial evidence that justifies the rejection of the opinion of . . . an examining physician . . . .” *Lester*, 81 F.3d at 830 (emphasis added).

**(a) Examining Psychologist Dr. Hapke**

The ALJ gave little weight to the July 2015 opinion of examining psychologist Dr. Hapke because (1) while Dr. Hapke opined that plaintiff's impairments would interfere with her ability to perform basic work activities and that it is doubtful she could maintain appropriate behavior in a work setting, his opinion was based in-part on plaintiff's complaints of physical problems and situational stressors such as homelessness; and (2) while plaintiff performed poorly on the psychological examination administered by Dr. Hapke, she was not engaged in mental health counseling at the time and subsequent records show improvement in her condition with regular treatment. Tr. 25. The Court finds that these were specific and legitimate reasons supported by substantial evidence.

First, plaintiff argues that it was inaccurate for the ALJ to characterize Dr. Hapke's assessment as based in-part on plaintiff's complaints of physical problems and situational stressors such as homelessness. Plaintiff notes that Dr. Hapke logically referred to physical diagnoses after reviewing treatment notes and nonetheless stated: "no physical impediment to the claimant's ability to perform ADLs was observed; consideration of the effect of the claimant's physical illness is deferred to medical professional opinion." Dkt. 10, at 4; Tr. 475. Likewise, plaintiff notes that although Dr. Hapke referred to the existence of situational stressors such as homelessness, such statements of context cannot be reasonably used to discount Dr. Hapke's professional opinion regarding plaintiff's mental limitations. Although plaintiff's interpretation of Dr. Hapke's opinion is plausible, advancing an alternative account does not itself undermine the reasonableness of the ALJ's interpretation of the medical evidence. As "DIAGNOSTIC IMPRESSION," Dr. Hapke referred to the physical illnesses of GERD and irritable bowel, endometriosis, fibromyalgia, asthma, and scoliosis; and to the psychosocial considerations of

recent homelessness, unemployment, poverty, extremely limited social support, and inadequate physical and mental health support. Tr. 477–78. In his concluding, "MEDICAL SOURCE STATEMENT," Dr. Hapke stated that the prognosis for plaintiff was guarded due to symptoms of anxiety, but also noted that her health is compromised by chronic fatigue, pain and discomfort secondary to fibromyalgia and GERD, and that her inability to function normally should be viewed in the context of recent homelessness, poverty, and social isolation (secondary to a history of unstable or abusive relationships). Tr. 478. It was reasonable for the ALJ to infer that Dr. Hapke's opinion was based, at least in part, on plaintiff's complaints of physical problems and situational stressors, and to discount Dr. Hapke's assessment of functional capacity to the extent it appeared to embrace physical impairments explicitly found to be not severe and situational stressors deemed to be transient.

Second, plaintiff argues that it was inaccurate for the ALJ to suggest that plaintiff was not engaged in mental-health counseling at the time of Dr. Hapke's report when her primary care physician had been addressing her mental-health needs prior to specialized counseling, and for the ALJ to characterize her mental health as improving when her symptoms continued to wax and wane with regular treatment. Dkt. 10, at 5. While again plaintiff's interpretation of Dr. Hapke's report is plausible, this alternative explanation does not undermine the ALJ's reasonable interpretation of the medical evidence. The ALJ examined plaintiff's treatment records, particularly with respect to mental health, in great detail. Tr. 22–24. The ALJ noted that while in March 2015 plaintiff was resistant to specialized counseling, by September 2015 she began engaging in specialized mental-health counseling and through the rest of the year reported improvement in her mood while receiving counseling with medication management at Harborview Medical Center, thought homelessness continued to be a stressor that worsened her

anxiety. Tr. 23; Tr. 512, 544, 713. The ALJ noted that by March 2016 plaintiff was involved in a vocational rehabilitation program and records from May 2016 showed that she continued to report that she was doing better. Tr. 24, 642, 653. This is bolstered by an October 2016 mental-health treatment note that the "goal" with respect to employment and activity was "To assist client in re-enter[ing] the work world she came from, support her return to work, refer to employment team to help her get back on track." Tr. 610. The ALJ characterized the 2016 treatment records as showing some waxing and waning of symptoms that appeared related primarily to situational stressors such as her living situation and problems with her ex-boyfriend, but also as indicating improvement, stability, and unremarkable mental status evaluations. Tr. 24, 615, 578–615, 637. The ALJ noted that in January 2017, even with plaintiff's limited compliance with treatment (e.g., she stopped taking one of her medications on her own), her mental status findings remained normal and showed her to be neatly dressed, alert, attentive, cooperative, and oriented with a euthymic mood, linear thoughts, fair to good insight and judgment, and no memory deficits. Tr. 24, 573. The ALJ further noted that by April 2017—the final date of available mental-health treatment notes— plaintiff reported not being as depressed and stated that she was unable to work due to being stressed out by others rather than due to an inability to carry out work tasks. Tr. 24, 557–58. The ALJ's characterization of the treatment record was neither inaccurate nor unreasonable and was supported by the non-examining opinions of Drs. Robinson and Lewis, who concluded that the treatment records demonstrated that plaintiff's diminished stress tolerance, manifesting as borderline traits and somatoform symptoms, overlapped her actual work and educational history and did not preclude work so long as her social limitations were considered. *See* Tr. 75, 90,105.

Moreover, plaintiff's arguments can be construed as cutting against a claim of disability. Although plaintiff asserts it was inappropriate for the ALJ to gloss over the mental-health treatment she had been receiving from her primary care provider, it was reasonable for the ALJ to infer that plaintiff's improvement could be attributable to seeking mental-health treatment from a specialist rather than a general practitioner. Similarly, although it would be inappropriate for the ALJ to cherry-pick the mental-health record for the highest functioning amidst the waxing and waning of symptoms, *see, e.g.*, *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014), here the ALJ both noted and explained the waxing and waning of plaintiff's longstanding mental-health diagnoses, which predate by many years the alleged date of disability. *See, e.g.*, Tr. 22, 24.

The ALJ supported her decision to discount the opinion of examining psychologist Dr. Hapke with substantial evidence and did not harmfully err in applying the law.

**(b) Examining Psychologist Dr. Widlan**

The ALJ gave little weight to the January 2015 opinion of examining psychologist Dr. Widlan because he did not review any records prior to rendering an opinion that was internally inconsistent given his evaluation showed plaintiff's thought processes, thought content, orientation, perception, memory, fund of knowledge, concentration, abstract thought, and insight and judgment were all within normal limits. Tr. 25, 319. The Court finds that this was a specific and legitimate reason supported by substantial evidence.

Dr. Widlan's examining opinion can be fairly characterized as a snapshot: he reviewed no treatment records and his evaluation took place eight months before plaintiff began specialized, mental-health treatment at Harborview. As such, it was reasonable for the ALJ to infer an inconsistency between his checkbox conclusions regarding plaintiff's severe inability to communicate and perform effectively in a work setting and to complete a normal work day and

work week without interruption from psychologically based symptoms, Tr. 317, and his personal observations that plaintiff was within normal limits with respect to thought process and content, orientation, perception, memory, fund of knowledge, concentration, abstract thought, and insight and judgment, Tr. 319. Dr. Widlan had no longitudinal basis by which to compare plaintiff's reported history against longstanding mental-health limitations that predated the alleged onset date and were addressed by specialized, mental-health counseling months after his evaluation. Thus, Dr. Widlan's examining opinion was inconsistent not only with his evaluation results, but also with a reasonable interpretation of the medical treatment records by the ALJ and non-examining psychologists Drs. Robinson and Lewis.

The ALJ supported her decision to discount the opinion of examining psychologist Dr. Widlan with substantial evidence and did not harmfully err in applying the law.

**(c) Non-Examining Psychologist Dr. Petaja**

The ALJ gave little weight to the January 2015 DSHS opinion of Dr. Petaja concurring (five days later) with Dr. Widlan's opinion because Dr. Petaja did not review any records other than Dr. Widlan's evaluation, which was not based on a review of prior records and was unsupported by his own evaluation of the claimant. Tr. 25, 312. For the reasons stated with respect to Dr. Widlan's opinion, the Court finds that the ALJ referenced specific evidence in the medical record to discount the non-examining opinion of Dr. Petaja. The ALJ supported her decision to discount the opinion of non-examining psychologist Dr. Petaja with substantial evidence and did not harmfully err in applying the law.

**(d) Examining Psychologist Dr. Czysz**

The ALJ gave little weight to the December 2016 opinion of examining psychologist Dr. Czysz because (1) the only records Dr. Czysz reviewed consisted of Dr. Widlan's evaluation;

(2) while plaintiff has a somewhat impaired fund of knowledge, the findings of the evaluation conducted by Dr. Czysz (that plaintiff performed generally well and was well groomed, cooperative, and fully oriented with intact memory and concentration) did not support the drastic impairment he opined; and (3) the treatment records suggested that plaintiff's complaints were largely situational and exacerbated by periods of homelessness. Tr. 25–26, Tr. 551–56. The Court finds that these were specific and legitimate reasons supported by substantial evidence.

First, the ALJ could reasonably discount Dr. Czysz's opinion given that the only medical evidence he reviewed was Dr. Widlan's opinion. That is, not only is the reason for discounting Dr. Widlan's opinion valid here, but also Dr. Czysz's opinion could be reasonably construed as conflicting with the mental-health treatment records and the reasonable interpretation of those records made by the ALJ and non-examining psychologists Drs. Robinson and Lewis. Second, and similarly, the ALJ could reasonably determine, in light of mental-health treatment records and the non-examining opinions of Drs. Robinson and Lewis, that Dr. Czysz's evaluation findings were not consistent with a marked impairment in the ability to maintain a regular schedule, adapt to changes in a routine work setting, communicate effectively, and complete a normal work week. Third, as discussed earlier with respect to Dr. Hapke's opinion, there were situational stressors that, when mitigated, appeared to allow plaintiff to improve her limitations from psychological symptoms to more manageable levels. *See, e.g.*, Tr. 549 (Oct. 2016 psychiatry outpatient note: "Her history of impulsivity with related SA, current depression and anxiety, unemployment, does increase her long term risk from low to moderate. She is currently housed, engaged in regular MH care, has social support, all of which mitigate this risk.").

The ALJ supported her decision to discount the opinion of examining psychologist Dr. Czysz with substantial evidence and did not harmfully err in applying the law.

**2. Evaluation of Plaintiff's Testimony**

Plaintiff contends that the ALJ failed to give specific, clear and convincing reasons for discounting plaintiff's testimony about the severity of her symptoms. *Hunter v. Colvin*, 798 F.3d 749, 755 (9th Cir. 2015). The Court disagrees.

The ALJ found that plaintiff's statements concerning the intensity, persistence, and limiting effects of her mental symptoms were not entirely consistent with the medical and other evidence because, among other reasons, (1) her longstanding history of mental health impairments, including a personality disorder, mood disorder, and anxiety, show that she was able to work despite them in the past and are consistent with the ability to do at least some kinds of work in the present; and (2) despite situational stressors, plaintiff's symptoms appeared to improve with medication and counseling. Tr. 22, 24. Those reasons are specific, clear and convincing.

First, the ALJ referred to treatment notes and the opinions of non-examining psychologists Drs. Robinson and Lewis that show plaintiff has a longstanding history of mental health issues but was able to work prior to the alleged onset date and has engaged in vocational rehabilitation, alongside other daily activities, after the alleged onset date. Tr. 24; *see, e.g.*, Tr. 74–78, 85–90, 101–05, 338–414, 610, 653. Second, the ALJ examined years of mental-health treatment records and concluded, consistent with the opinions of non-examining psychologists Drs. Robinson and Lewis, that while plaintiff had some social restrictions, she was not precluded from all work activity and showed stability and improvement with consistent counseling and medication. Tr. 22–25, 74–78, 85–90, 101–05; *see, e.g.*, Tr. 573, 610, 614–16. Plaintiff argues that a better interpretation of the treatment records is that they support plaintiff's account of debilitating mental limitations. The Court finds, however, that the treatment records also

plausibly support the ALJ's decision to discount plaintiff's testimony about the severity of her mental limitations. The Court is mindful that "it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment." *Garrison*, 759 F.3d at 1017. Here, however, the ALJ acknowledged and examined the waxing and waning of plaintiff's mental limitations over the course of longstanding treatment that both predated and postdated the alleged onset date. The relevant question was *not* whether plaintiff's mental-health symptoms were waxing and waning—they clearly waxed and waned before and after the alleged onset date—but whether the treatment records could reasonably support less severe symptoms than the ones to which plaintiff testified. The ALJ reasonably found that the treatment records did not support the severity of mental limitations to which plaintiff attested.

Because two of the ALJ's stated reasons for discounting plaintiff's testimony about the severity of her mental limitations were specific, clear and convincing, the Court need not address the ALJ's other reasons for discounting plaintiff's mental-symptom testimony. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (including an erroneous reason among other reasons to discount a claimant's credibility does not negate the validity of the overall credibility determination and is at most harmless error where an ALJ provides other reasons that are supported by substantial evidence).

The ALJ supported her decision to discount plaintiff's testimony about the severity of her mental limitations with substantial evidence and did not harmfully err in applying the law.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

///

DATED this 26th day of June, 2019.

BRIAN A. TSUCHIDA
Chief United States Magistrate Judge